(No. 37899.—

BASIL H. COUTRAKON *et al.*, Appellants, *vs.* J. FRED ADAMS *et al.*, Appellees.

*Opinion filed May 20, 1964.—Rehearing denied September 25, 1964.*

COUTRAKON AND COUTRAKON, of Springfield, for appellants.

LONDRIGAN & LONDRIGAN, of Springfield, (BROWN, HAY & STEPHENS, and ELIZABETH G. FRAZEE, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiffs purchased a home from the defendant-builders. Subsequently fires occurred on January 6 and 10, 1954, the latter resulting in practically a complete loss. Judgment was entered on two jury verdicts for $23,902.08 and on appeal the Appellate Court, Third District, reversed. (*Coutrakon v. Adams,* 39 Ill. App. 2d 290.) We granted leave to appeal because the case appeared to involve the question of whether there is an implied warranty that a

house not wholly completed at the time of sale must be safe and fit for human habitation.

Defendants, who are contractors, pooled their efforts and commenced building the house in the fall of 1952. Plaintiffs went through the house during construction several times in the spring of 1953. They entered into a contract to purchase on June 9, 1953, in which defendants agreed to complete porch screening, laying and finishing flooring, installation of electricity and fixtures, and painting. These items were completed during the month and the deed delivered upon payment of the purchase price. Plaintiffs took possession on July 3, 1953. The heat was turned on in September 1953 and maintained thereafter.

Plaintiffs point out that this court has never been asked to decide whether there is an implied warranty in the sale of an incomplete house and maintain that it is necessary to a decision of this case to pass upon that question. The Appellate Court recognized the lack of proof as to the cause of the fires but stated that it preferred to examine the broad legal question of implied warranty. While this is an interesting problem, its determination is not necessary to a decision here. This case can and should be decided upon the basis that the evidence does not support the verdicts.

· The cause of the fires was alleged faulty installation of the radiant heating unit, which was a gas-fired boiler described at some length in the Appellate Court opinion. It is contended that the compartment containing the burners of the unit, open at the top and bottom, was mounted directly on the plywood flooring. However, no proof was made by the workmen hired by plaintiffs after the first small fire, or the firemen called to that fire, that they found anything amiss with the boiler installation or that the fire started within or under the boiler unit. It seems inconceivable that if conditions were as contended by plaintiffs that the workmen and firemen would have failed to note them. None of them testified that the floor under the unit was

burned during the first fire but some stated that combustible material stored in the small utility room by plaintiffs was burned and charred. On the contrary, the affirmative evidence was to the effect that a transite slab was placed on top of the plywood floor directly under the unit. All of the evidence following the serious second fire was to the effect that the floor damage was a hole under the partition between the living room and utility room which extended each way from the partition wall, a portion of it necessarily being under the unit since it was only six inches from the wall. Nevertheless, the center of the hole was under the wall, not the unit, and there was sufficient floor left to support the 400-pound boiler unit.

Harold Von de Bur, a friend of plaintiffs' family who had been a plumbing and heating contractor for many years, examined the premises several times. He was taken there the morning after the first fire and stayed about thirty minutes while repairmen were working on the pipes. He returned a day or two later and found that the repair work had been completed and the heat was on. He testified on behalf of the plaintiffs that he checked the thermostat and the boiler was working. He said that as far as he could tell it was operating all right and that he made no suggestions about turning the heat off. He further testified that a price was agreed upon for him to move the unit from the utility room to the garage the following week but the serious second fire intervened. Despite his examination of the premises and his agreement to move the unit, he did not testify to the absence of a transite slab. In fact, the defendants did not even question him about the mounting of the boiler unit. The testimony of the expert witness is of no value since it was based upon a hypothetical question which assumed that the origin of the fire was the floor under the boiler rather than the division wall which was the center of the hole burned in the floor.

While we do not review disputed questions of fact, it is

192

our duty to determine if there is evidence to support the verdicts. (*Watts* v. *Bacon & Van Buskirk Glass Co.* 18 Ill.2d 226.) We are of the opinion that there was no proof of defective installation of the unit and therefore the verdicts cannot stand.

For the reasons stated, the judgment of the Appellate Court, Third District, reversing the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*