The People of the State of Illinois, Plaintiff-Appellee, v.
Earl K. Haney, Defendant-Appellant.

**Gen. No. 51,577M.**

First District, Fourth Division.
April 10, 1968.
Rehearing denied May 17, 1968.

Johnson, Snow, Mountcastle & Schroeder, of Chicago (Lendol D. Snow, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Robert Zadek, and John Ward, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED

Driving while under the influence of intoxicating liquor.*

JUDGMENT

After a bench trial, defendant was found guilty and fined $100.

CONTENTIONS ON APPEAL

(1) The information does not charge a crime.

(2) The evidence does not prove defendant's guilt beyond a reasonable doubt.

(3) The court erred in sustaining the State's objection to a line of cross-examination designed to reveal bias on the part of the arresting officer.

EVIDENCE

*Vincent Sodaro, for the State*

On the morning of December 27, 1965, Sodaro, a police officer, was proceeding in a squad car west on West 95th Street, Oak Lawn, when he observed that as defendant's

---

* Ill Rev Stats (1965), c 95½, § 144. Uniform Act Regulating Traffic on the Highways of Illinois, § 47.

3

car approached from the opposite direction, it crossed the center line, causing Sodaro to pull onto the right shoulder of the road to avoid a collision. He thereupon turned the squad car around and pursued defendant. As the squad car drew alongside defendant's car, defendant did not stop immediately but continued driving on the right shoulder. When defendant stopped and got out of his car, he was staggering and holding on to the door. Sodaro also smelled the odor of alcohol.

Sodaro then took defendant to the Oak Lawn police station, observing the manner in which defendant walked from the squad car to the station, a distance of 150 to 200 feet. On the basis of his observation, he found that defendant was very belligerent, his walking was very bad, his balance was at all times swaying and wobbly, his speech was thick-tongued, and his eyes were bloodshot. Sodaro was an experienced police officer, having made 500 such arrests over a period of eight years. In his opinion, defendant was under the influence of intoxicating liquor and was unfit to drive. At the police station defendant refused to take a breathalizer or any other tests. Defendant asked for and was given permission to phone his attorney.

On cross-examination, Sodaro testified that he had authorized defendant to drive his car into a parking lot on the other side of 95th Street because, while he knew defendant had been drinking, he had no opinion of defendant's intoxication at that time.

The defense sought to examine Sodaro to show that he had believed defendant was connected with the Liquor Mart at 87th Street and Ridgeland Avenue, and that because of this connection he had called defendant a gangster. He testified, however, that he had not known defendant before the time in question; that he had connected defendant with the Liquor Mart only because defendant had in his possession a vehicle sticker registered to that address; and that he had not called defendant

4

a gangster. The court then sustained the State's objection to this line of questioning.

Later in the proceedings, in answer to the court's direct question, Sodaro stated that defendant explained the crossing of the center line of the street by saying that he was reaching for his cigarette.

*Earl K. Haney, defendant*

He claimed that the officer mistakenly associated him with the Liquor Mart because of the vehicle sticker which, in fact, belonged to his brother; that the officer, because of his beliefs about the management of the Liquor Mart, referred to him as a gangster and was "thoroughly abusive." He told the officer that he had inadvertently crossed the yellow line in the street while trying to retrieve a lighted cigarette which he had dropped in his lap; and that he had not stopped immediately because he had not realized at first that the officer was trying to stop him. He also told the officer that he had consumed four drinks during the course of the evening. He declined to take the breathalizer test on prior advice of counsel.

*Lendol D. Snow, for defendant*

(This witness was counsel for defendant, but he received the court's permission to testify.) Based on his interview with defendant at the police station within an hour after his arrest, and on his telephone conversation with defendant twenty minutes earlier, it was his opinion that defendant was not in any manner intoxicated or under the influence of alcohol, although he was obviously agitated and upset. Defendant had told Snow that the officer had been abusive and had called him a gangster.

OPINION

■ (1) Defendant contends that the judgment is void because the information failed to charge a crime. Such an error may be challenged for the first time upon review. See People v. Stringfield, 37 Ill App2d 344, 346, 185 NE2d 381, and cases cited therein.

5

The information stated that defendant had operated a motor vehicle upon a public highway in violation of the applicable statute (see footnote above) by "driving under the influence of liquor." This section provides that it is unlawful for any person who is "under the influence of intoxicating liquor" to drive any vehicle within this State. The point raised by defendant is, therefore, whether the omission of the word "intoxicating" on the face of the information rendered it fatally defective. We are aware of no Illinois decision on this point.

■ Article II, § 9 of the Illinois Constitution declares that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. "The purpose of this guaranty is to give the accused such specific designation of the offense as will enable him to prepare his defense and to plead the judgment in bar of a subsequent prosecution for the same offense." People v. Brown, 336 Ill 257, 258, 168 NE 289, and see People v. Petropoulos, 59 Ill App2d 298, 317, 318, 208 NE2d 323, affirmed, 34 Ill2d 179, 214 NE2d 765, for reference to numerous other authorities on this point.

■ ■ Where the language of an information is as fully descriptive of the offense as is the language of the statute denouncing it, and alleges in substance every essential element of the offense, the information is sufficient, even though it may not be couched in the precise language of the statute. People v. Smith, 57 Ill App2d 74, 206 NE2d 463, cert denied 383 US 910; People v. Vysther, 49 Ill App2d 223, 199 NE2d 668; People v. Clarke, 407 Ill 353, 95 NE2d 425. And the courts will not make "so technical a construction of an indictment (or information) as to serve as a protection for the guilty rather than a defense for the innocent." People v. Grigsby, 357 Ill 141, 147, 191 NE 264.

■ The question thus becomes whether or not the term, "under the influence of liquor," is descriptive of the same condition as "under the influence of intoxicating

6

liquor." In our opinion it is, as we believe that the word "liquor," as commonly used, means "intoxicating liquor." State v. Gulczynski, (Del Gen Sess), 2 WW Harr 120, 120 A 88, 89; Shahan v. Hardwick, 30 Ga App 528, 118 SE 575; Clay v. State, 24 Ga App 811, 102 SE 367; Armstrong v. State, 150 Tenn 416, 265 SW 672, 673.

In Middleton v. Commonwealth, 197 Ky 422, 247 SW 40 (1923), the court found that an indictment which charged the defendant with "transporting liquor" was sufficient in law as a charge of the statutory crime involving transportation of "spirituous, vinous, malt, or intoxicating liquors." We shall quote rather fully from this opinion because we feel that the courts of Kentucky should be, and very probably are, preeminently qualified in their knowledge of what is, and what is not, liquor. At page 41 the court stated:

> While it is true, of course, as urged, that there are many liquors other than spirituous, vinous, malt, and intoxicating liquors, and which may be transported lawfully, that fact of itself is not sufficient to render the indictment fatally defective, if the word "liquor" by itself, according to its usual acception in common language, is such as to enable a person of common understanding to know that intoxicating liquor only was intended, since, as we have seen, this is all that is required. That the word "liquor" and the words "intoxicating liquor" are commonly used synonymously is a matter of common knowledge, and that such was its use here, it seems to us, must have been understood by any person of common understanding, and in our judgment the court did not err in overruling the demurrer to the indictment.

By statute in Illinois there has been created the Illinois *Liquor* Control Commission, and the mayors of cities, presidents of villages, etc., are designated the local *liquor* control commissioners. Their authority comes from

7

the Illinois *Liquor* Act. From all these titles, the qualifying words "intoxicating" or "alcoholic" are conspicuously absent, yet they cause no confusion as to their meaning. Ill Rev Stats (1965), c 43, § 94, et seq.

Furthermore, in the case on appeal, the information charged defendant with being *under the influence of* liquor. Patently, when modified by the phrase, "under the influence of," the word "liquor" must be synonymous with "intoxicating liquor" as that term is used in the statute.

On the basis of the foregoing, we conclude that the information sufficiently charged defendant with the conduct proscribed by the statute. The case of People v. Stringfield, 37 Ill App2d 344, 347–348, 185 NE2d 381, cited by defendant, does not stand for a contrary principle, but is, in our opinion, entirely consistent with the conclusion we have reached on this point.

 (2) Next, defendant contends that the evidence does not establish defendant's guilt beyond a reasonable doubt. As we have seen, the evidence is in conflict, the arresting officer having given his opinion that, based on his observations and experience, the defendant was intoxicated, while defendant testified that he was not. (The testimony of defendant's attorney did not constitute full corroboration of defendant's testimony because he did not see his client until an hour after the arrest.) Clearly at issue, therefore, was the witnesses' credibility, which is essentially a matter for determination by the trial court. This principle is so well established as to require no citation of authority. We find no basis in the evidence which would justify reversing the judgment of the trial court on this score. Remarkably similar on the facts to the instant case, and also affirming convictions despite conflicting evidence on intoxication, are People v. Raddle, 39 Ill App2d 265, 188 NE2d 101, and People v. Buzinski, 64 Ill App2d 194, 212 NE2d 270.

(3) Finally, defendant contends that the trial court erred in not permitting his counsel to continue pursuing a line of cross-examination designed to reveal what he alleges was bias on the part of the police officer, generated by the latter's belief that there was a connection between defendant and a certain liquor establishment.

However, it appears from the record that the officer did testify that he did not know of defendant's connection with the Liquor Mart before he stopped him, that he made the connection when he found a vehicle sticker registered to the address of the Liquor Mart in defendant's possession, and that he did not call defendant a gangster. Only after this testimony did the court sustain the State's objection to the line of questioning.

 Further, defendant, himself, testified in great detail to the alleged hostility and abusive conversation of the officer. Defendant's counsel also testified that the same story was related to him by defendant at the police station. The State made no objection to this testimony. Viewing the entire record, we cannot see how defendant was prejudiced in not being allowed further cross-examination of Sodaro. Limitation of cross-examination is a matter which is ordinarily left to the sound discretion of the trial judge, and his exercise thereof will be upheld in the absence of a showing of prejudice. People v. Naujokas, 25 Ill2d 32, 37, 182 NE2d 700; People v. Caldwell, 62 Ill App2d 279, 284–285, 210 NE2d 556, and cases there cited.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.