RAYMOND V. COLSANT, Plaintiff-Appellee, *v.* LEOPOLD A. GOLDSCHMIDT *et al.*, Defendants-Appellants.

Second District    No. 80-463

Opinion filed June 5, 1981.

Robert J. Best, of Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago, for appellants.

Walter H. Hamilton, Jr., of Vanderwater, Gooding & Schroeder, of Aurora, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants appeal from the judgment of the circuit court of Kane County awarding the plaintiff judgment in the amount of $684.33.

The plaintiff is the owner of a townhouse which he purchased from the defendant, Kirkwood Associates. The contract for the sale of the house carried an express warranty by Kirkwood Associates against defective materials, structural defects and faulty workmanship for a period of one year from the date of sale. The warranty was subject to the following qualifications:

"Builder does not assume responsibility for any secondary or consequential damages caused by any defects."

The plaintiff purchased the townhouse in May of 1979. In August of 1979, rain leaked into the basement of the Colsant home damaging carpet on the basement floor. The plaintiff notified the defendant, Kirkwood Associates, about the leak the following day. A building crew, within three or four days, came and dug up the drain tile and found blockage in the tile which prevented the rain water from draining off. The tile was promptly repaired at no cost to the plaintiff and thereafter no further leakage occurred. However, it cost $684.33 to have the carpet dried out and the pad replaced. The plaintiff demanded that the defendants reimburse him for this expense, which the defendants refused to do, citing the disclaimer of responsibility for consequential damage quoted above. The plaintiff then sued to recover the $684.33 expended for restoring the damaged carpet and recovered judgment in that amount, plus costs.

In this appeal the defendants raise the following issues:

(1) Whether a builder/vendor and a purchaser of a newly constructed residence may contract for a limitation of remedies in the event of a breach of an express warranty or of the implied warranty of habitability, and

(2) Whether in this case there was an effective limitation of remedies.

It is conceded by the defendants that under the principles of *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, there is an implied warranty of habitability on the defendants' part in the sale of the residence in question.

Defendants' contend that they complied with both the implied warranty of habitability as well as their express warranty by promptly repairing the defect and thus making plaintiff's home "habitable."

They further contend that their express warranty did exclude responsibility for secondary or consequential damages. They assert that this exclusion is not an attempted waiver or disclaimer of the implied warranty of habitability, but merely a limitation of remedies, which is a well recognized and judicially sanctioned precaution in contractual relationships.

Defendants further assert that their express warranty fulfilled every legitimate expectation imposed by the Illinois courts in the implied warranty of habitability. They accept the duty to repair latent defects and they assert they did so in this case. They thus contended they have satisfied both of the objectives of the judicially imposed implied warranty of habitability and the contractural express warranty. Defendants further assert that they are not plaintiff's insurer and are not responsible for reimbursing plaintiff for the entire unpredictable and potentially enormous consequential damages resulting from a defect.

It is the defendants' position that the contractual limitation of remedies excluding consequential damages resulting from a breach of warranty is enforceable.

Plaintiff contends that the defendants are responsible for the latent defect in the drain tile and they are liable for the proximate consequences of their failure to properly install the drain tile. Plaintiff asserts that the cleaning bill for the installed carpet is a proximate consequence of the latent defect, and he contends that the contract disclaimer here is insufficient to adequately apprise a vendee of the limitation of the implied warranty of habitability that he is ostensibly waiving. The defendants conceded at oral argument that the implied warranty of habitability would allow plaintiff to recover consequential damages such as here claimed, but for the disclaimer, included as part of the express warranty.

■■ The sole issue, therefore, is whether the language of the disclaimer:
   " * * * Builder does not assume responsibility for any secondary
   or consequential damages caused by any defects."
is sufficient to bar recovery under the implied warranty of habitability. *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, was the first Illinois Supreme Court decision to recognize implied warranty of habitability. That case held that a builder-seller of a new home makes an implied warranty that the house will be reasonably fit for use as a residence.

The *Petersen* court made it clear that:
   "Although the implied warranty of habitability is a creature of

public policy, we do not consider a knowing disclaimer of the implied warranty to be against the public policy of this State. However, we do hold that any such a disclaimer must be strictly construed against the builder-vendor. (See *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17.) We refer to the well-reasoned opinion of the Supreme Court of Missouri in *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, where it was held that 'boilerplate' clauses, however worded, are rendered ineffective in such a disclaimer (564 S.W.2d 879, 881), and the court further stated:

> '[O]ne seeking the benefit of such disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.' (Emphasis in original.) *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, 881 n. 4." *Petersen*, at 43.

As *Petersen* indicates, even when a seller includes in the contract a conspicuous clause specially disclaiming the implied warranty of habitability, this may not be enough to show that such was in fact the agreement reached. The burden is on the seller to prove that the buyer knew that the implied warranty did not attach to the sale of the new residence.

A disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him. A purported waiver that is overbroad, too general and unspecific will not adequately put the buyer on notice that he is waiving his warranty of habitability. *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 21.

The defendants assert, however, that a limitation of remedies is less drastic than a complete waiver or disclaimer of warranty. They assert that a complete waiver or disclaimer leaves the buyer without warranty and in the event of defects without a remedy. A limitation of remedies still leaves the buyer with remedies in the event of defects. They assert, therefore, that, accordingly, the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*) is less strict in allowing a limitation of remedies than it is in allowing a disclaimer of warranties. They point out that under section 2—316 of the Code, a disclaimer of implied warranties must be conspicuous and in carefully crafted language. They cite section 2—719 of the Code which provides in relevant part:

> "(2) Where circumstances cause an exclusive or limited remedy

to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. * * *." (Ill. Rev. Stat. 1979, ch. 26, par. 2—719(2), (3).)

They point out that the official comment to section 2—719 sets forth the purposes of this section:

"1. Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.

*   *   *

3. Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim warranties in the manner provided in Section 2—316." Ill. Ann. Stat., ch. 26, par. 2—719(1), (3), Council Commentary, at 602-603 (Smith-Hurd 1963).

It is the defendants' position that they have effectively limited the remedy available to the plaintiff under section 2—719(3) of the Code and that the plaintiff is thus barred from the consequential damages he claims. We disagree and affirm the judgment of the trial court.

In the present case the contract consisted of 14 typed pages containing 65 paragraphs and 515 lines of type. The disclaimer clause was located in the last line of the second paragraph of page 9 of the contract amidst other clauses of the same size, small typed as all the other clauses of the contract. The clause does not even mention habitability, or explain what the consequences of such a disclaimer are. This clause was undoubtedly insufficient to show the implied warranty of habitability was effectively disclaimed or the limitations of remedies under section 2—719(3) of the Code.

The trial court specifically found that there was no waiver or attempted waiver of habitability; the damage was caused by a latent defect in the construction and the defendants were responsible for the construction and are therefore liable for the resulting damages and that the wording of the contract did not constitute a waiver by the plaintiff. We believe the trial judge was correct in his ruling on these issues.

The measure of damages in the case of a breach of the implied warranty of habitability is the cost of repair (*Hanavan v. Dye* (1972), 4 Ill. App. 3d 576). In that case the purchaser of a new house sued the builder-vendor and recovered a judgment of water damage caused by faulty construction. To remedy the defect, the plaintiffs installed drain tile

under the house. This ended the water problem. They sued for the cost of installation of the drain tile, for the cost of renting the machine to suck up water, the cost of plastering damaged areas and removing, cleaning, and relaying carpeting. The total was $588.30, the amount of the judgment awarded them. The appellate court found these damages to be appropriate and stated its opinion to be that the cost of remedying the defects or deficiencies is the proper measure of the damages for the defective or deficient construction. (*Hanavan*, at 580.) To the same effect is the holding in *Park v. Sohn* (1980), 90 Ill. App. 3d 794, which also involved water seepage damage, as did the case of *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479. In *Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383, 396, the appellate court held that the proper measure of damages was the reasonable charges "necessary to make the house habitable."

The damages awarded by the trial court in the cause before us are the reasonable charges necessary to make the house habitable, and therefore the judgment of the circuit court of Kane County should be affirmed.

Judgment affirmed.

HOPF and VAN DEUSEN, JJ., concur.